UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
| ) | |
| Plaintiff,     ) | No. 6:19-CR-53-CHB-HAI |
| ) | |
| v.     ) | |
| ) | RECOMMENDED DISPOSITION |
| JAMES T. TOMBLIN,     ) | |
| ) | |
| Defendant.     ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Boom (D.E. 6), the Court considers reported violations of supervised-release conditions by Defendant James T. Tomblin. Defendant transferred into this District on August 1, 2019. D.E. 1. Judge Thomas Phillips entered a judgment against Defendant in January 2015 after he pleaded guilty to one count of conspiracy to manufacture 50 grams or more of methamphetamine (21 U.S.C. §§ 841(a)(1), 846). D.E. 1-3. He was sentenced to 87 months of imprisonment and five years of supervised release. *Id*. at 2-3. Defendant was released from custody on July 17, 2019.

On August 26, 2019, the United States Probation Office ("USPO") informed the Court that, on July 22, a urine sample from Defendant tested positive for buprenorphine via instant testing device. D.E. 3.

> According to Tomblin, he was using Suboxone to curtail his cravings for opiates and requested some time to get his Social Security Card and state identification in order to get into a Suboxone clinic. Tomblin advised he was in a Suboxone clinic prior to his incarceration in the instant offense and that it kept him from using prescription opiates illegally.

*Id*. Judge Boom granted the USPO's request "that the Court take no action at this time, so that Tomblin can participate in a Suboxone clinic, at his own expense." *Id.*

## I.

On August 27, 2020, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report,

> On August 20, 2020, Tomblin submitted a urine sample which resulted positive for the use of Suboxone and methamphetamine. Tomblin has a valid prescription for suboxone but denied the use of methamphetamine. The sample was sent to the national laboratory for confirmation. On August 27, 2020, the undersigned received a Drug Test Report confirming the use of methamphetamine.

Violation #1 charges a violation of the condition that prohibits Defendant from possessing or using any controlled substance except as prescribed by a physician. Based on Defendant's use of methamphetamine, this is a Grade C violation.

Violation #2 charges a violation of the condition that Defendant not commit another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's methamphetamine use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

## II.

On September 11, 2020, the Court conducted an initial appearance on the violation allegations under Rule 32.1 of the Federal Rules of Criminal Procedure. D.E. 7. The hearing was conducted by video, with Defendant's consent. Defendant knowingly, voluntarily, and intelligently waived his right to a preliminary hearing. *Id*. The government moved for interim

2

detention; Defendant requested a general continuance of the detention issue. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

On September 22, Defendant filed in the record a set of "letters regarding the defendant's care of his girlfriend who was seriously injured in a motor vehicle accident in July." D.E. 11. The Court has reviewed the letter from the orthopedist and the letter from Defendant's girlfriend.

At the final hearing on September 23, 2020, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 12. This hearing was also conducted by video, with Defendant's consent. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id.* He acknowledged under oath that he had used methamphetamine. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report and the United States thus established Violations #1 and #2 under the standard of § 3583(e). The parties argued for different sentences.

### III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's underlying conviction is a Class A felony. This results in a five-year maximum period of incarceration upon revocation pursuant to § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original

sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under Section 7B1.1, Defendant's admitted conduct in Violation #2 qualifies as a Grade B violation. Given Defendant's criminal history category of II (the category at the time of the conviction) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is six to twelve months. U.S.S.G. § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction for a conspiracy to manufacture methamphetamine does not carry a maximum term of supervised release. 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(A)(viii).

## IV.

At the final hearing, the government requested revocation with an imprisonment term at the bottom of the Guidelines Range—six months, followed by four years of supervised release. The defense requested time-served followed by inpatient drug addiction treatment and two years of supervised release.

The government emphasized Defendant's breach of trust. Defendant was on release for about a year when he tested positive for methamphetamine. He used suboxone without a prescription shortly after his release, but Probation did not seek revocation. Defendant tested negative in February and March of this year, but he was not tested again until August 20. Upon the positive instant test, Defendant initially denied using methamphetamine. The government suggested that Defendant thought he could get away with it because he had not been tested for so

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

long. Defendant also received an initial sentence below the statutory maximum (but in the middle of his Guidelines Range), which counsels against further leniency.

The government also argued that the revocation conduct—using meth—is closely related to his conviction conduct of cooking meth. The government argued that, although Defendant was young (21 years old) at the time of his arrest on the underlying charges, his criminal history was understated because there were several pending Tennessee charges at the time of his federal sentencing.

Anticipating that the defense would request treatment in lieu of incarceration, the government acknowledged that Defendant has extraordinary family circumstances concerning his girlfriend's care needs. Nevertheless, the government noted, fifty days after the car wreck, Defendant tested positive for meth. The circumstances did not stop Defendant from using. The government argued incarceration was needed to deter further drug crimes and protect the public (because meth use promotes trans-national drug trafficking).

Concerning treatment, the government suggested Defendant needs extensive drug abuse treatment. He did not complete RDAP in prison, but received only a 40-hour program. Thus, the government was in favor of Defendant receiving drug treatment as directed by the Probation Officer. *See* D.E. 1-3 at 4.

The defense argued that extraordinary circumstances support a below-Guidelines sentence of time served plus drug rehabilitation treatment—effectively treatment in lieu of incarceration. The defense did not recommend a specific duration or provider for the treatment, but the defense's arguments implied it had inpatient treatment in mind. As background, Defendant was unable to complete drug treatment in prison (he was given mental health treatment instead), which the defense argued meant he was not given the proper tools to prevent

relapse. The defense argued that defendant relapsed due to the stress of caring for his girlfriend (who broke several bones in the July 1 car wreck) and his mother, who has brain and lung cancer. With Defendant gone, the only person who can care for the girlfriend is Defendant's mother, who is in ill health herself. Defendant also has an uncle in hospice with kidney and liver cancer.

Defendant, the defense argued, has taken responsibility for his meth use by stipulating to the violations. He was already taking suboxone treatment every two weeks. And he is ready to go to rehab.

The defense argued that, aside from the strain it would put on Defendant's girlfriend and mother, incarceration put Defendant's health at risk because he suffers from asthma. The defense argued that inpatient treatment would provide deterrence and protection similar to imprisonment.

Defendant addressed the Court. He apologized to the Court and his family. He asked for rehab so he could get his life back together.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court

shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835.

> The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the [mandatory revocation] rule of section 3583(g) when considering any action against a defendant who fails a drug test.

18 U.S.C.A. § 3583(d). The treatment exception is not warranted here. The problem is that Defendant denied his meth use to the Probation Officer. The Court believes treatment in lieu of incarceration is best for Defendants who are completely honest about their drug-abuse issues. Although the Court agrees with the parties that additional treatment will likely be beneficial, this anticipated benefit does not sufficiently outweigh the breach of the Court's trust and the need for serious sanctions to protect the public and induce compliance.

One factor the Court must consider in crafting a penalty concerns the nature and circumstances of Defendant's underlying conviction. It appears that Defendant's methamphetamine addiction drove him to participate in a conspiracy to manufacture methamphetamine. His drug craving induced risky behavior and harmed his community.

The Court also considers Defendant's history and characteristics and the need to protect the public and deter future criminal conduct. Defendant did perform well on supervision for almost a year. Defendant's criminal history category is only II, but there were serious charges pending as noted on pages 10-11 of the PSR. Defendant is an addict whose addiction drove him to becoming a smurf and a cook in a meth production conspiracy. His return to meth portends potential further criminal conduct. Defendant needs a clear message that meth use will not be

tolerated. The meth available now is more dangerous than what Defendant used to cook. And by interacting with drug traffickers, Defendant brings danger into his home. The people he cares for also need him to be sober. Illegal drug use is not the answer to his stress.

Another factor is the need for additional training or treatment. Defendant's conditions already contain a directive that Defendant must participate in a treatment program as directed by the Probation Officer. Probation is encouraged to evaluate Defendant for potential future treatment upon his release.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The breach of trust is what drives the recommendation to revoke. Defendant was shown leniency at his original sentencing when he received a sentence below the statutory minimum (but within his Guidelines Range). He was shown leniency when Probation caught him using suboxone without a prescription in July 2019. D.E. 3. Nevertheless, when confronted with a positive instant test result for methamphetamine this August, Defendant denied use. The Court will recommend a below-Guidelines sentence, but Defendant is warned he should expect no breaks in the future. If he is caught using meth again, he should expect a sentence within the Guidelines Range or higher.

The Court recommends revocation with a sentence of approximately four months. The Court recommends a release date of December 18, 2020, so Defendant can be home for the holidays. The Court recommends that this revocation sentence be followed by four years of supervision. This term gives him credit for the one year of his original five-year term during

which he performed well.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends a sentence of approximately four months' incarceration. This is below the Guidelines Range of six to twelve months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, a below-Guidelines sentence is appropriate because of Defendant's family circumstances. As noted in the letters and described at the final hearing, Defendant's girlfriend suffered multiple fractures in a July 1 auto accident. Defendant is her caretaker. He is also caretaker for his ailing mother. These people need him, but they need him to be sober.

For the reasons discussed herein, the Court finds the recommended sentence is sufficient, but not greater than necessary, to address the pertinent penalty factors.

## VI.

Based upon the foregoing, the Court **RECOMMENDS**:

(1) That, upon his stipulation, Defendant be found guilty of Violations #1 and #2.

(2) Revocation with a term of imprisonment to terminate on December 18, 2020.

(3) A new four-year term of supervised release under the conditions previously imposed. D.E. 1-3.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FOURTEEN DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 28th day of September, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge